# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JAMES LEE LISTER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 20-1312-KHV |
| **CITY OF WICHITA, KANSAS,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

## MEMORANDUM AND ORDER

James Lee Lister filed suit against his former employer City of Wichita, Kansas alleging that it discriminated and retaliated against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. Plaintiff also alleges that defendant retaliated against him based on disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. This matter is before the Court on Defendant's Motion For Judgment On The Pleadings, (Doc. #34) filed May 16, 2022. For reasons stated below, the Court sustains defendant's motion in part.

## Legal Standards

A motion for judgment on the pleadings under Rule 12(c), Fed. R. Civ. P., is governed by the same standards as a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P. See Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1160 (10th Cir. 2000). In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—and not merely conceivable—on its

face. Id.; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679–80.

Plaintiff bears the burden to frame his claims with enough factual matter to suggest that he is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. See Twombly, 550 U.S. at 556. Plaintiff makes a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678. Plaintiff must show more than a sheer possibility that defendant has acted unlawfully—it is not enough to plead facts that are "merely consistent with" defendant's liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand. Iqbal, 556 U.S. at 678. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the pleading has alleged—but has not shown—that the pleader is entitled to relief. See id. at 679. The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case. Robbins v. Okla., 519 F.3d 1242, 1248 (10th Cir. 2008).

**Factual And Procedural Background**

Plaintiff alleges as follows:

Plaintiff is an African American male. Plaintiff has had asthma since the age of 12 and mental health bipolar depression for which he has taken medication for the last ten years. He also has type two diabetes. Over the last five years, he has taken shots and oral medications for diabetes.

On or about August 4, 2014, the City of Wichita Department of Public Works and Utilities hired plaintiff as a laborer.  Plaintiff was the only African American on his crew of four to five people.  Plaintiff experienced racially disparate treatment while working for the department.  His supervisor, Kerry, degraded his work and told plaintiff that he did not "catch on to work related issues."  Kerry would exclude plaintiff from overnight jobs, claiming he had no need for plaintiff but would allow a white male who started on the same day as plaintiff to work overnight.

While attending orientation at city hall for his new position, plaintiff received a parking ticket for an expired meter.  Plaintiff forgot to pay the fine for the ticket, which led to the suspension of his driver's license.  On or about September 23, 2014, when he discovered that his license was suspended, plaintiff reported the incident to his supervisor, Joe.  Joe told him to take care of it as soon as possible.  Plaintiff went back out to the field only to be called back to the office a couple of hours later.  He met with his supervisors, Elizabeth Warren and Joe, who communicated that he was required to have a valid driver's license for his position and fired him.  Immediately afterwards, plaintiff paid his parking ticket and returned to his supervisors with the receipt and his reinstated license, but they did not allow him to return to work.  Plaintiff alleges that white males who received Driving Under The Influence ("DUI") citations kept their jobs despite losing their driver's licenses.

On October 13, 2015, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that defendant harassed and discharged him because of his race and his complaints about employment discrimination.  On the charge form, he marked race and retaliation as the basis for discrimination.  He alleged that the earliest and latest discrimination took place on September 23, 2014.  On October 19, 2015, the EEOC dismissed his charge because it was not timely filed.

Between January 10, 2017 and the filing of his complaint, plaintiff applied for 77 different jobs with the City of Wichita, but it did not hire him. Specifically, between January 10, 2017 and October 16, 2019, plaintiff applied for 57 jobs.  Between October 16, 2019 and August 11, 2020, plaintiff applied for eight jobs.[1]  From August 11, 2020 to the filing of this lawsuit, plaintiff applied for 12 jobs.[2]  The City of Wichita Human Resources department responded that plaintiff was not eligible for the positions due to his rehire status[3], and he needed to submit all requests to director Chris Bezruki.  Plaintiff submitted several requests to Bezruki but did not receive a response.

On February 4, 2016, plaintiff filed an employment discrimination suit against defendant, alleging that it discriminated against him because of race and retaliated against him for complaining about such discrimination.  On June 23, 2016, the district court granted defendant's motion to dismiss.  Plaintiff filed a motion to alter or amend the judgment, which the district court denied.  Plaintiff appealed the dismissal, and the Tenth Circuit affirmed the dismissal.  On

---

[1] On January 2, 2020, plaintiff applied for the "Equipment Operator-Street Maintenance" position.  On January 7, 2020, plaintiff applied for the "Bus Mechanic's Helper-Vehicle Maintenance" position.  On January 21, 2020, plaintiff applied for the "Laborer-Sewer Maintenance" position.  On January 28, 2020, plaintiff applied for the "Event Worker I" position.  On January 28, 2020, plaintiff applied for the "Custodial Worker" position.  On March 3, 2020, plaintiff applied for the "Equipment Operator I-Street Maintenance" position.  On July 26, 2020, plaintiff applied for the "Bus Mechanic's Helper-Vehicle Maintenance" position.  On August 2, 2020, plaintiff applied for the "Laborer-Storm Water" position.

[2] On August 24, 2020, plaintiff applied for the "Laborer-Water Distribution position. On September 26, 2020, plaintiff applied for the "Laborer-Sewer Treatment" and the "Laborer-Water Distribution" positions.  On October 30, 2020, plaintiff applied for the "Laborer-Street Maintenance" position.  On November 1, 2020, plaintiff applied for the "Airport Equipment Operator II" and the "Laborer-Water Distribution" positions.  On November 3, 2020, plaintiff applied for the "Bus Mechanic's Helper-Vehicle Maintenance" position.  On November 8, 2020, plaintiff applied for the "Bus Mechanic's Helper-Vehicle Maintenance" position.  On November 11, 2020, plaintiff applied for the "Van Driver-Van Operations," "Equipment Operator I-Water Distribution," "Equipment Operator-Street Maintenance" and "Laborer-Sewer Maintenance" positions.

[3] Plaintiff alleges that defendant put him on the "do not rehire list."

-5-

October 31, 2016, while the appeal was pending, plaintiff filed another lawsuit against defendant for employment discrimination. The district court dismissed the case as duplicative of the initial lawsuit.

On August 11, 2020, plaintiff filed an EEOC charge alleging that defendant's refusal to hire him was an act of discrimination based on race, color and retaliation. The EEOC was unable to conclude that defendant had violated a statute.

On November 12, 2020, plaintiff filed this suit against the City, alleging that in failing to rehire him, it discriminated and retaliated against him in violation of Title VII.[4]  Plaintiff also alleged that defendant retaliated against him based on disability in violation of the ADA.

## Analysis

Defendant argues that the Court must dismiss all of plaintiff's claims. Defendant argues that the Court should dismiss plaintiff's claims related to refusals to hire that occurred more than 300 days before plaintiff filed his second EEOC charge and, because he has failed to exhaust, claims that occurred after he filed that charge.

Defendant also argues that the Court should dismiss plaintiff's claim for discrimination under Title VII because plaintiff has not alleged that in failing to rehire him between October 16, 2019 and August 11, 2020, defendant treated him less favorably than similarly situated employees. Defendant argues that the Court should dismiss plaintiff's claim for retaliation under Title VII because plaintiff has not sufficiently alleged a causal connection between protected activity and its failure to rehire him between October 16, 2019 and August 11, 2020.

---

[4]  In the fact section of his complaint, plaintiff states, "Discriminated and retaliation against plaintiff by black listing and retaliation because I exercised my rights under Title VII by filing charges of discrimination and retaliation." Second Amended Complaint (Doc. #24) filed December 31, 2021 at 2.

Finally, defendant argues that the Court should dismiss plaintiff's ADA retaliation claim because plaintiff has not alleged that he engaged in protected activity for the purposes of an ADA retaliation claim.

## I.    Exhaustion Of Plaintiff's Title VII And ADA Claims

Defendant argues that the Court should dismiss plaintiff's claims that occurred more than 300 days before he filed his second EEOC charge and, because he has failed to exhaust administrative remedies, claims related to refusals to hire that occurred after plaintiff filed that charge.  Plaintiff argues that his time to file an EEOC charge was equitably tolled or that defendant is equitably estopped from asserting an exhaustion defense.

Under Title VII and the ADA, plaintiff must base his discrimination claims on discrete acts.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002); Payan v. U.P.S. Inc., 905 F.3d 1162, 1168 (10th Cir. 2018); Davidson v. America Online, Inc., 337 F.3d 1179, 1183 (10th Cir. 2003).  If plaintiff fails to timely file an EEOC charge regarding each discrete employment incident or adverse action, defendant may raise an affirmative defense of failure to exhaust.  Lincoln v. BNSF Ry. Co., 900 F.3d 1166, 1185 (10th Cir. 2018).  To exhaust, plaintiff generally must present his claims to the EEOC and receive a right-to-sue letter based on that charge.  Id. at 1181.  In Kansas, plaintiff must file an administrative charge within 300 days of the alleged discriminatory action.  See 42 U.S.C. § 2000e-5(e)(1).  The charge "shall be in writing and signed and shall be verified," 29 C.F.R. § 1601.9, and must at a minimum identify the parties and "describe generally the action or practices complained of," 29 C.F.R. § 1601.12(b).

A discrimination charge is liberally construed but is limited to the scope of investigation that can reasonably be expected to follow the charge of discrimination submitted.  Jones v. U.P.S., Inc., 502 F.3d 1176, 1186 (10th Cir. 2007).  The charge must contain facts concerning the

discriminatory and retaliatory actions underlying each claim.  Id.  The charge tells the EEOC what to investigate, provides the opportunity to conciliate the claim and gives the charged party notice of the alleged violation.  See Martinez v. Potter, 347 F.3d 1208, 1211 (10th Cir. 2003).  The timeliness requirement is like a statute of limitations, i.e. subject to waiver, estoppel and equitable tolling.  Zipes v. Trans World Airlines, 455 U.S. 385, 393 (1982).

Plaintiff filed his EEOC charges on October 13, 2015 and August 11, 2020.  As a matter of law, any claim of discrimination that occurred before October 16, 2019 (i.e., 300 days before plaintiff filed his second charge, dated August 11, 2020) is therefore time-barred.  See Morgan, 536 U.S. at 113 (each discrete discriminatory act starts new clock for filing charges alleging that specific act).  Thus, plaintiff did not timely file his EEOC charge for the 57 jobs between his termination on September 23, 2014 and October 16, 2019, and he cannot sue under Title VII or the ADA.

Further, where discrete incidents of discrimination occur after an employee has filed an EEOC charge, the employee must file an additional or amended EEOC charge to satisfy the exhaustion requirement.  See Martinez, 347 F.3d at 1210 (discrete incidents that occurred after plaintiff filed charge of discrimination but were part of continuing pattern were unexhausted).  Here, plaintiff filed his latest charge of discrimination on August 11, 2020.  Thus, plaintiff did not exhaust administrative remedies for the 12 jobs which defendant allegedly failed to hire plaintiff to perform after August 11, 2020.

Under proper circumstances, the timely filing of a discriminatory charge may be equitably tolled.  Bennett v. Quark, Inc., 258 F.3d 1220, 1225–26 (10th Cir. 2001), *overruled in part on other grounds as explained in* Boyer v. Cordant Techs., Inc., 316 F.3d 1137, 1140 (10th Cir. 2003).  The Tenth Circuit applies a strict standard when a plaintiff asserts equitable tolling: equitable

tolling only applies when the defendant has actively deceived the plaintiff in such a way that plaintiff is "lulled into inaction." Krehbiel v. Union Pac. R.R. Co., No. 19-CV-2002, 2019 WL 3387049, at *3 (D. Kan. July 26, 2019). To show active deception, plaintiff must plead facts that his or her failure to timely file "resulted from either (1) a deliberate design by the employer or (2) actions that the employer should have unmistakably understood would cause the plaintiff to delay filing a charge." Id.

Plaintiff argues that his time to file his EEOC charge was equitably tolled because he never received a response from human resources.[5] Plaintiff does not allege active deception by defendant. He argues that he attempted to follow administrative remedies, but human resources did not respond.[6] Plaintiff does not allege that this was "a purposeful delay tactic or that defendant should have known this action would delay plaintiff's filing of an EEOC charge." Krehbiel, 2019 WL 3387049, at *3. Consequently, plaintiff's pleadings do not afford a basis to invoke equitable tolling in this case.

The Court sustains defendant's motion for judgment on the pleadings on plaintiff's claims under Title VII and the ADA regarding the 57 job applications between January 10, 2017 and October 16, 2019 and the 12 job applications between August 11, 2020 and the filing of this lawsuit. The only remaining refusal to hire claims are the eight jobs for which plaintiff applied

---

[5] Plaintiff also argues that he did not know that he needed to exhaust administrative remedies until he read the case law and that due to COVID-19, he did not have the ability or resources to file or follow up. Plaintiff's complaint does not mention these matters, and the Court does not consider evidence outside of the pleadings. Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010). Even if the Court considered these arguments, they are without merit. The fact that plaintiff did not understand the requirement to exhaust administrative remedies or that COVID-19 prevented him from filing a charge or following up is not attributable to defendant.

[6] In support of his argument, he attaches to his response brief an email chain in which plaintiff requested that defendant deem him hirable and asked for the HR director's contact information. He does not attach this to his complaint, and on a motion for judgment on the pleadings, the Court does not consider evidence outside the pleadings. Gee, 627 F.3d at 1186.

between October 16, 2019 and August 11, 2020—which all occurred within 300 days prior to the filing of his EEOC charge.

## II.     Discrimination Under Title VII

Plaintiff alleges that because of race, defendant did not hire him to perform eight jobs for which he applied between October 16, 2019 and August 11, 2020.  Defendant argues that it is entitled to judgment because plaintiff has failed to allege that defendant treated him less favorably than similarly situated employees.

Plaintiff relies on the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Plaintiff bears the initial burden to establish a prima facie case. To establish a prima facie case of discrimination, he must allege that (1) he belongs to a protected class; (2) he suffered adverse employment action; and (3) the challenged action took place under circumstances which give rise to an inference of discrimination.  Bird v. Regents of New Mexico State Univ., 619 F. App'x 733, 741 (10th Cir. 2015); Hysten v. Burlington N. & Santa Fe Ry. Co., 296 F.3d 1177, 1181 (10th Cir. 2002).

Defendant does not dispute that plaintiff belongs to a protected class.  Defendant argues that plaintiff did not allege any facts that in failing to rehire him, it treated him less favorably than similarly situated applicants.  The "lynchpin" of a disparate treatment claim is showing that the employees are "similarly situated" or "deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline."  Aramburu v. Boeing Co., 112 F.3d 1398, 1404 (10th Cir. 1997). Plaintiff's complaint alleges that white male employees who received DUI citations kept their jobs upon losing their driver's licenses, but defendant terminated plaintiff's employment when he lost his driver's license for failing to pay a parking ticket.  While plaintiff's comparison is relevant to whether defendant subjected plaintiff to disparate treatment

in terminating his employment, plaintiff's termination is not at issue in this case.

Plaintiff does not allege any facts regarding other job applicants between October 16, 2019 and August 11, 2020 or whether defendant treated similarly situated co-workers or applicants differently in the hiring process.  Sasser v. Salt Lake City Corp., 772 F. App'x 651, 665 (10th Cir. 2019) (discriminatory purpose may be inferred from evidence of differential treatment at interview stage).  Plaintiff's complaint does not allege any facts that give rise to an inference of discrimination in the hiring process as to any of the eight jobs in question between October 16, 2019 and August 11, 2020.  Plaintiff's argument that defendant "blacklisted him" after it terminated his employment on September 23, 2014 and plaintiff filed EEOC charges on October 13, 2015 and August 11, 2020 is essentially a retaliation theory and is considered separately below.  Therefore, the Court sustains defendant's motion for judgment on the pleadings of plaintiff's Title VII discrimination claim.

**III.   Retaliation Under Title VII**

Plaintiff claims that defendant "blacklisted" him and refused to rehire him for eight positions in 2020 (on January 2, 7, 21 and 28, March 3, July 26 and August 2) because he filed an EEOC charge of discrimination on October 13, 2015.[7]  Defendant argues that plaintiff cannot show a causal connection between his protected activity on October 13, 2015 and its failure to rehire

---

[7]    Plaintiff argues that defendant's failure to rehire him for each of the 77 jobs for which he applied between his termination and the filing of this case was an act of retaliation under Title VII.  As discussed above, however, for discrimination and retaliation claims, each discrete incident of discriminatory and/or retaliatory treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted.  Morgan, 536 U.S. at 110–13.  Discrete acts such as termination, failure to promote, denial of transfer or refusal to hire are easy to identify and therefore require exhaustion.  Martinez, 347 F.3d at 1211.  Plaintiff was required and failed to file a timely EEOC complaint for defendant's failure to hire him before January 2, 2020 and after August 11, 2020.  Plaintiff may, however, use untimely discrete acts of discrimination or retaliation as background evidence in support of a timely claim.  West v. Norton, 376 F. Supp. 2d 1105, 1123 (D.N.M. 2004) (citing Morgan, 536 U.S. at 113).

him in January through August of 2020.

To succeed on a retaliation claim under Title VII, plaintiff must show that defendant retaliated against him for engaging in protected activity. Thomas v. Berry Plastics Corp., 803 F.3d 510, 514 (10th Cir. 2015). To do so, plaintiff can either provide direct evidence of retaliation, or follow the McDonnell Douglas burden-shifting framework. Id. Under the McDonnell Douglas framework, plaintiff has the initial burden of establishing a prima facie case of retaliation. Id. To establish a prima facie case of retaliation, plaintiff must show that (1) he engaged in protected activity, (2) he suffered a material adverse action and (3) a causal connection exists between the protected activity and the adverse action. Id.

To establish a causal connection, plaintiff must allege facts from which one can infer that defendant would not have taken the adverse action if plaintiff had not engaged in protected activity. McDonald v. City of Wichita, Kansas, 156 F. Supp. 3d 1279, 1302 (D. Kan. 2016). Plaintiff may allege a causal connection with facts that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action. O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001). Where temporal proximity is lacking, plaintiff must allege additional facts to establish causation. Conroy v. Vilsack, 707 F.3d 1163, 1181 (10th Cir. 2013).

Plaintiff filed his first charge of discrimination on October 13, 2015. In 2020, plaintiff unsuccessfully applied for eight jobs with defendant. Defendant's failure to rehire plaintiff five years after he engaged in protected activity and filed his charge of discrimination with the EEOC does not justify an inference of causation. See Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999) (six-week period between adverse action and protected activity close enough to establish causation, but three-month period is not). Plaintiff alleges the additional fact, however, that after defendant terminated his employment, it blacklisted him. Because defendant did not

rehire plaintiff after it terminated his employment, blacklisted him and has continued to reject his job applications since he filed his EEOC charge in 2015, plaintiff has plausibly alleged a causal connection between protected activity and adverse action. Therefore, the Court overrules defendant's motion for judgment on the pleadings for failure to state a claim of retaliation under Title VII.

### IV.  Retaliation Under The ADA

Plaintiff's complaint alleges that defendant retaliated against him because he has three disabilities and was qualified for the positions for which he applied, but in violation of the ADA, defendant failed to rehire him. Defendant argues that plaintiff did not engage in any protected activity for the purposes of an ADA retaliation claim.

To establish a prima facie case of retaliation under the ADA, plaintiff must allege: (1) he engaged in a protected activity, (2) he was subjected to adverse employment action subsequent to or contemporaneous with the protected activity, and (3) a causal connection between the protected activity and the adverse employment action. Anderson, 181 F.3d at 1178.

Plaintiff alleges that he suffers from asthma, bipolar depression and type two diabetes, but does not allege facts which suggest that he engaged in a protected activity under the ADA. His response brief does not address defendant's argument. Being disabled does not constitute protected activity under the ADA. See Rosier v. TargetX, No. 2:17-CV-1306-RMG-MGB, 2018 WL 1832998, at *3 (D.S.C. Mar. 28, 2018); Rodriguez v. City of Hopewell Sch. Bd., No. 3:20CV282 (DJN), 2020 WL 4323219, at *3 (E.D. Va. July 27, 2020). Because plaintiff has failed to allege that he engaged in protected activity under the ADA, the Court sustains defendant's motion for judgment on the pleadings on plaintiff's ADA retaliation claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion For Judgment On The Pleadings, (Doc. #34) filed May 16, 2022 is **SUSTAINED in part.**

Based on plaintiff's failure to exhaust administrative remedies, the Court grants defendant's motion for judgment on the pleadings on (1) plaintiff's claims related to refusals to hire that occurred more than 300 days before plaintiff filed his EEOC charge and, (2) because he has failed to exhaust, claims that occurred after he filed his EEOC charge. The Court grants defendant's motion for judgment on the pleadings based on discrimination under Title VII between October 16, 2019 and August 11, 2020 because plaintiff did not allege facts that give rise to an inference of discrimination in the hiring process. Because plaintiff has failed to allege that he engaged in protected activity under the ADA, the Court sustains defendant's motion for judgment on the pleadings on plaintiff's ADA retaliation claim.

One claim remains in the case: that in failing to rehire him eight times between October 16, 2019 and August 11, 2020, defendant retaliated against plaintiff in violation of Title VII.

Dated this 3rd day of August, 2022 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge