IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JAMES LEE LISTER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CITY OF WICHITA, KANSAS, )<br>)<br>Defendant. )<br>_____ ) | CIVIL ACTION<br><br>No. 20-1312-KHV |

## MEMORANDUM AND ORDER

James Lee Lister filed suit against his former employer, the City of Wichita, Kansas, alleging that it retaliated against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. This matter is before the Court on Defendant's Motion For Summary Judgment (Doc. #61) filed December 9, 2022 and Plaintiff [sic] Motion For Summary Judgment And In Opposition To Defendant's Motion For Summary Judgment (Doc. #63) filed December 28, 2022. For reasons stated below, the Court sustains defendant's motion and overrules plaintiff's motion as moot.

## Legal Standard

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010). Once the moving party meets the initial burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which he carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). To carry his burden, the nonmoving party may not rest on his pleadings but must instead set forth specific facts supported by competent evidence. Nahno-Lopez, 625 F.3d at 1283.

The Court views the record in the light most favorable to the nonmoving party. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). It may grant summary judgment if the nonmoving party's evidence is merely colorable or is not significantly probative. Liberty Lobby, 477 U.S. at 250–51. In response to a motion for summary judgment, a party cannot rely on ignorance of facts, speculation or suspicion and may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). The heart of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 251–52.

## Factual Background

The following facts are uncontroverted.

Plaintiff is an African American male. On August 4, 2014, the City of Wichita Department of Public Works and Utilities hired plaintiff as a laborer. Three weeks later, on August 29, 2014, plaintiff received a negative performance review. Specifically, his supervisor marked

"unsatisfactory/improvement required" regarding plaintiff's quality and quantity of work. Performance Review (Doc. #61-2) at 1. On September 16, 2014, the State of Kansas suspended plaintiff's driver's license. Plaintiff did not learn of this suspension until September 22, 2014. Because the City required plaintiff to have a valid driver's license to maintain his job and to immediately report any suspension of his driver's license, plaintiff reported the suspension to his supervisor that same day. At that time, plaintiff was within a six-month probation period for new hires. On September 22, 2014, the City fired plaintiff because he had not maintained a valid driver's license. In the termination letter, the City informed plaintiff that he was "not eligible to apply for other positions within the City." Exhibit AA (Doc. #62-2) at 2.

On October 18, 2015, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that defendant had harassed and discharged him because of his race and his complaints about employment discrimination. On the charge form, he marked race and retaliation as the basis for discrimination. He alleged that the earliest and latest discrimination took place on September 23, 2014. On October 19, 2015, the EEOC dismissed his charge because it was not timely filed.

Between January 10, 2017 and the filing of his complaint, plaintiff applied for 77 different jobs with the City, but it did not hire him. Specifically, between January 10, 2017 and October 18, 2019, plaintiff applied for 57 jobs. Between October 18, 2019 and August 11, 2020, plaintiff applied for eight jobs.[1] From August 11, 2020 to the filing of this lawsuit, plaintiff applied for

---

[1] On January 2, 2020, plaintiff applied for the "Equipment Operator-Street Maintenance" position. On January 7, 2020, plaintiff applied for the "Bus Mechanic's Helper-Vehicle Maintenance" position. On January 21, 2020, plaintiff applied for the "Laborer-Sewer Maintenance" position. On January 28, 2020, plaintiff applied for the "Event Worker I" position. On January 28, 2020, plaintiff applied for the "Custodial Worker" position. On March 3, 2020, plaintiff applied for the "Equipment Operator I-Street Maintenance" position. On July 26, 2020,
(continued . . .)

12 jobs.² The City of Wichita Human Resources department responded that plaintiff was not eligible for the positions due to his rehire status.

On February 4, 2016, plaintiff filed an employment discrimination suit against defendant, alleging that it had discriminated against him because of race and retaliated against him for complaining about such discrimination. On June 23, 2016, the district court granted defendant's motion to dismiss. Plaintiff filed a motion to alter or amend the judgment, which the district court denied. Plaintiff appealed the dismissal, and the Tenth Circuit affirmed the dismissal. On October 31, 2016, while the appeal was pending, plaintiff filed another discrimination lawsuit against defendant. The district court dismissed the case as duplicative of the initial lawsuit.

On August 11, 2020, plaintiff filed an EEOC charge alleging that the City's refusal to hire him was an act of discrimination based on race, color and retaliation. The EEOC was unable to conclude that defendant had violated a statute.

On November 12, 2020, plaintiff filed this suit against the City, alleging that in failing to rehire him, it discriminated and retaliated against him in violation of Title VII. Plaintiff also alleged that defendant retaliated against him based on disability in violation of the ADA. On August 3, 2022, the Court dismissed plaintiff's claims of discrimination under Title VII because

---

plaintiff applied for the "Bus Mechanic's Helper-Vehicle Maintenance" position. On August 2, 2020, plaintiff applied for the "Laborer-Storm Water" position.

² On August 24, 2020, plaintiff applied for the "Laborer-Water Distribution position. On September 26, 2020, plaintiff applied for the "Laborer-Sewer Treatment" and the "Laborer-Water Distribution" positions. On October 30, 2020, plaintiff applied for the "Laborer-Street Maintenance" position. On November 1, 2020, plaintiff applied for the "Airport Equipment Operator II" and the "Laborer-Water Distribution" positions. On November 3 and 8, 2020, plaintiff applied for the "Bus Mechanic's Helper-Vehicle Maintenance" position. On November 11, 2020, plaintiff applied for the "Van Driver-Van Operations," "Equipment Operator I-Water Distribution," "Equipment Operator-Street Maintenance" and "Laborer-Sewer Maintenance" positions.

plaintiff failed to allege that he had engaged in a protected activity under the ADA. The Court also dismissed plaintiff's claims of discrimination under Title VII based on events between October 16, 2019 and August 11, 2019 because plaintiff did not allege facts that gave rise to an inference of discrimination. Finally, based on plaintiff's failure to exhaust administrative remedies, the Court dismissed his claims that related to refusals to hire that occurred more than 300 days before plaintiff filed his EEOC charge in August of 2020 or that occurred after he filed his EEOC charge.

In the end, the Court retained one claim: that in failing to rehire him eight times between October 16, 2019 and August 11, 2020, defendant retaliated against plaintiff in violation of Title VII. Specifically, plaintiff alleges that because of his EEOC complaint on October 18, 2015, defendant refused to rehire him.

## Analysis

### I.     Defendant's Motion For Summary Judgment

Defendant asserts that it is entitled to summary judgment on plaintiff's retaliation claim because (1) plaintiff did not timely exhaust administrative remedies; (2) plaintiff cannot establish a prima facie case of retaliation; and (3) plaintiff cannot show that defendant's legitimate, non-retaliatory reason for its actions against plaintiff is pretext for discrimination.

#### A.     Exhaustion Of Plaintiff's Title VII Claim

Defendant argues that plaintiff did not timely exhaust administrative remedies. According to defendant, to bring a claim based on its failure to hire, plaintiff would have had to file a charge of discrimination within 300 days of learning that the City had designated him as ineligible for rehire.

Under Title VII, plaintiff must base his discrimination claims on discrete acts. Nat'l R.R.

Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).  If plaintiff fails to timely file an EEOC charge regarding each discrete employment incident or adverse action, defendant may raise an affirmative defense of failure to exhaust.  Lincoln v. BNSF Ry. Co., 900 F.3d 1166, 1185 (10th Cir. 2018).  To exhaust, plaintiff generally must present his claims to the EEOC and receive a right-to-sue letter based on that charge.  Id. at 1181.  In Kansas, plaintiff must file an administrative charge within 300 days of the alleged discriminatory action.  See 42 U.S.C. § 2000e-5(e)(1).

Defendant argues that because plaintiff's remaining retaliation claims relate to its decision to designate plaintiff as ineligible for rehire, this designation is the discrete adverse action which triggers his duty to exhaust.  Plaintiff alleges, however, that in retaliation for his EEOC charge of discrimination on October 18, 2015, defendant refused to hire him for eight positions in 2020. Discrete acts such as termination, failure to promote, denial of transfer or refusal to hire are easy to identify and require exhaustion.  Martinez, 347 F.3d at 1211.  Plaintiff filed his EEOC charge on August 11, 2020 which alleged that defendant's refusal to hire him was an act of retaliation. Plaintiff applied for the eight jobs between October 18, 2019 and August 11, 2020—all within 300 days prior to the filing of his EEOC charge in August of 2020.

Because plaintiff filed an EEOC charge within 300 days of the alleged retaliatory failures to rehire, the Court overrules defendant's motion for summary judgment on this ground.

### B. Retaliation Under Title VII

Plaintiff alleges that because he filed an EEOC charge of discrimination on October 18, 2015, defendant refused to rehire him for eight positions in 2020 (on January 2, 7, 21 and 28, March 3, July 26 and August 2).  Defendant argues that plaintiff cannot show (1) a causal connection between his protected activity on October 18, 2015 and its failure to rehire him or (2) that its nonretaliatory reasons for the alleged adverse actions are pretexts for discrimination.

6

To succeed on a retaliation claim under Title VII, plaintiff must show that defendant retaliated against him for engaging in protected activity. Thomas v. Berry Plastics Corp., 803 F.3d 510, 514 (10th Cir. 2015). To do so, plaintiff can either provide direct evidence of retaliation, or follow the McDonnell Douglas burden-shifting framework. Id. Under the McDonnell Douglas framework, plaintiff has the initial burden of establishing a prima facie case of retaliation. Id. To establish a prima facie case of retaliation, plaintiff must show that (1) he engaged in protected activity, (2) he suffered a material adverse action and (3) a causal connection exists between the protected activity and the adverse action. Id.

To establish a causal connection, plaintiff must demonstrate facts from which one can infer that defendant would not have taken the adverse action if plaintiff had not engaged in protected activity. McDonald v. City of Wichita, Kansas, 156 F. Supp. 3d 1279, 1302 (D. Kan. 2016). Plaintiff may establish a causal connection with facts that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action. O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001). Where temporal proximity is lacking, plaintiff must show additional facts to establish causation. Conroy v. Vilsack, 707 F.3d 1163, 1181 (10th Cir. 2013). Notwithstanding the absence of close temporal proximity between the initial protected activity and the ultimate adverse action, "a pattern of adverse . . . actions over a period of weeks or months may demonstrate" a retaliatory animus. Steele v. Kroenke Sports Enters., L.L.C., 264 F. App'x 735, 746 (10th Cir. 2008) (citing Marx v. Schnuck Mkts., Inc., 76 F.3d 324, 329 (10th Cir. 1996)); see also Hinds v. Sprint/United Mgmt. Co., 523 F.3d 1187, 1204–05 (10th Cir. 2008) (pattern of retaliatory conduct may provide temporal proximity sufficient to preclude summary judgment).

Plaintiff alleges that based on his protected activity on October 18, 2015, defendant refused to rehire him for eight positions. In 2020, plaintiff unsuccessfully applied for eight jobs with

7

defendant. Defendant's failure to rehire plaintiff five years after he engaged in protected activity and filed his charge of discrimination with the EEOC does not justify an inference of causation. See Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999) (six-week period between adverse action and protected activity close enough to establish causation, but three-month period is not).[3]

Without explanation, plaintiff only argues that "[seven] years of . . . going back and forth with [defendant] demonstrates a causal connection." Plaintiff Motion For Summary Judgment And In Opposition To Defendant's Motion For Summary Judgment (Doc. #62) filed December 28, 2022 at 11. Plaintiff has not presented evidence, however, from which one can infer that defendant would not have refused to rehire plaintiff if he had not engaged in protected activity. In fact, on September 22, 2014, before plaintiff filed the EEOC charge in October of 2015, defendant had informed plaintiff that he was ineligible for rehire.

Defendant's decision to designate plaintiff as ineligible for rehire clearly could not have been related to plaintiff's EEOC charge that he filed over a year later, and plaintiff has not submitted additional facts which one can infer that defendant's refusal to rehire him was based on protected activity—rather than his ineligibility status. Plaintiff has not established a genuine issue of material fact whether defendant's refusals to rehire him for the eight positions in 2020 were causally related to his protected activity in October of 2015.

Even assuming *arguendo* that plaintiff could establish a prima facie case of retaliation, he

---

[3] Even if plaintiff had alleged that defendant refused to rehire him because he had filed an employment discrimination suit against defendant in October of 2016—which would be his most recent protected activity before his applications in 2020—plaintiff still could not establish a causal connection through temporal proximity. See Anderson, 181 F.3d at 1179 (six-week period between adverse action and protected activity close enough to establish causation, but three-month period is not).

has not shown a genuine issue of material fact whether defendant's proffered reason for its decision not to hire him is pretext. Plaintiff may show pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered reasons that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the non-discriminatory reasons asserted. See Jones v. Barnhart, 349 F.3d 1260, 1269 (10th Cir. 2003). Mere conjecture that the employer's explanation is pretext is insufficient, however, to defeat summary judgment. Id.

Defendant argues that it did not rehire plaintiff for the eight positions in 2020 because in September of 2014, it had designated him ineligible for rehire. Defendant presented evidence that (1) the State suspended plaintiff's driver's license in September of 2014; (2) plaintiff knew that as a condition of his employment, he needed to maintain a valid license; (3) defendant terminated plaintiff the same day it learned that he did not have a valid license; and (4) in his termination letter, defendant told plaintiff that he was ineligible for rehire. Plaintiff has not controverted these facts. Further, plaintiff has not presented evidence which demonstrates weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in defendant's proffered reason, such that a reasonable factfinder could rationally find it unworthy of credence.

Because plaintiff has not established a genuine issue of material fact (1) whether defendant's refusal to rehire him for the eight positions in 2020 were causally connected to his EEOC charge in October of 2015 or (2) whether defendant's non-retaliatory reason for its refusal to hire him is pretextual, the Court sustains defendant's motion for summary judgment.

## II.    Plaintiff's Motion For Summary Judgment

In response to defendant's motion for summary judgment, plaintiff also seeks summary judgment on his retaliation claim. See Plaintiff [sic] Motion For Summary Judgment And In

Opposition To Defendant's Motion For Summary Judgment (Doc. #63) filed December 28, 2022. Because plaintiff has not established a genuine issue of material fact (1) whether defendant's refusal to rehire him for the eight positions in 2020 were causally connected to his EEOC charge in October of 2015 or (2) whether defendant's non-retaliatory reason for its refusal to hire him is pretextual, he cannot establish as matter of law, that he is entitled to summary judgment on his retaliation claim. Nevertheless, the Court overrules plaintiff's motion for summary judgment as moot.

**IT IS THEREFORE ORDERED** that Defendant's Motion For Summary Judgment (Doc. #61) filed December 9, 2022 is **SUSTAINED** and Plaintiff [sic] Motion For Summary Judgment And In Opposition To Defendant's Motion For Summary Judgment (Doc. #63) filed December 28, 2022 is **OVERRULED as moot.**

Dated this 23rd day of January, 2023 at Kansas City, Kansas.

s/ Kathryn H. Vratil  
KATHRYN H. VRATIL  
United States District Judge